IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

ROBERT HIRSCH and ROCCO J. )
DeLEONARDIS, )
 )
    Plaintiffs, )
 )
       v. )   1:14cv332 (JCC/TRJ)
 )
ROBERT JOHNSON and ADAM )
ROMNEY, )
 )
    Defendants. )

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendant Adam Romney's ("Romney") Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue ("Motion"). [Dkt. 3.] The Court will grant Romney's Motion to Dismiss for the reasons stated below.

### I. Background

This case arises out of a dispute about how to distribute settlement funds arising from a case in the Superior Court of Arizona, Maricopa County captioned *Wanchuk, et al. v. PCM Ventures I, LLC, et al.*, No. CV2007-009523.

    A. Factual Background

On November 20, 2011, Defendant Robert Johnson ("Johnson"), acting individually and on behalf of Tightlines

1

International ("Tightlines") executed an assignment of claims, defenses and interests in an action captioned *Wanchuk, et al. v. PCM Ventures, I, LLC et al.*, Dkt. CV2007-0096523 ("*Wanchuk* litigation") to Rocco DeLeonardis ("DeLeonardis") and Robert Hirsch ("Hirsch"). (Compl. ¶ 8.)

Plaintiffs allege that the assignment was made in consideration of Plaintiffs' agreement to provide Johnson and Tightlines with "cash, assistance, Arizona legal counsel, payment of legal expenses, fees and costs" to pursue Johnson's and Tightlines' claims against Phoenix Capital Management, P.C.M. Ventures I, LLC ("PCM"), and defend against PCM's counterclaims. (Compl. ¶ 10.) Under the assignment, any proceeds of recovery, whether by trial, mediation, arbitration, or negotiation would be split on a 65-35% basis. (Compl. ¶ 12.) The 65% share was to go to Plaintiffs in this action -- Hirsch and DeLeonardis -- and the 35% share was to go to Johnson and Tightlines. (Compl. ¶ 13.)

Plaintiffs allege that on or about December 6, 2012, DeLeonardis and Romney signed a retainer agreement whereby Romney would act as attorney for DeLeonardis and Hirsch, in their capacities as assignees and interested parties in the *Wanchuk* litigation. (Compl. ¶ 14.) Plaintiffs allege that on or about May 13, 2013, Johnson, his wife Pantipa Kitticachorn ("Kitticachorn"), and Tightlines retained Romney to defend them

2

in a separate suit filed against them in the Superior Court of Maricopa County captioned *Janitell v. Robert Johnson*, et al., CV2013-053875. (Compl. ¶¶ 15, 48.) Plaintiffs aver that Romney colluded with Johnson and Kitticachorn "to defraud plaintiffs of their 65% interest in the *Wanchuk* litigation, while Romney was still acting as Plaintiffs' counsel in the *Wanchuk* litigation." (Compl. ¶ 16.)

Specifically, Plaintiffs allege that the *Wanchuk* litigation was settled in October 2013 and on October 24, 2013 all interested parties executed a Settlement Agreement. (Compl. ¶ 19.) Defendants in the *Wanchuk* matter wired $200,000 in settlement proceeds to Romney's escrow account at TruWest Credit Union. (Compl. ¶ 20.) The $200,000 arrived in Romney's account on November 1, 2013. (Compl. ¶ 20; Ex. 5.) Plaintiffs allege that since the settlement proceeds arrived to his account on November 1, 2013, Romney has refused to disburse the $130,000 allegedly owing to Hirsch and DeLeonardis. (Compl. ¶ 22.) Plaintiffs allege that Romney "cites his preference for the approval of Johnson and Kitticachorn before disbursing funds" despite the requirements of the assignment and retainer agreements. (Compl. ¶ 22.)

Plaintiffs assert four claims against Johnson: (1) breach of contract (Compl. ¶¶ 24-30); (2) repudiation of contract (Compl. ¶¶ 31-34); (3) tortious interference with

3

retainer agreement (Compl. ¶¶ 35-39); (4) fraud (Compl. ¶¶ 40-45); and five claims against Romney: (1) breach of December 6, 2012 retainer agreement (Compl. ¶¶ 46-57); (2) conversion and misappropriation (Compl. ¶¶ 58-61); (3) breach of fiduciary duty (Compl. ¶¶ 62-65); (4) legal malpractice (Compl. ¶¶ 66-76); (5) punitive damages (Compl. ¶¶ 76-78).

    B. Procedural Background

Plaintiffs filed their verified complaint against Johnson and Romney on March 31, 2014. [Dkt. 1.] On April 30, 2014, Romney filed his Motion to Dismiss and accompanying memorandum. [Dkts. 3-4.] On June 16, 2014, Romney filed a Notice of No Response by Plaintiff to Defendant's Motion to Dismiss. [Dkts. 11-12.] On June 16, 2014, Plaintiffs filed their opposition. [Dkts. 13-14.] The opposition states that at the hearing on June 19, 2014, Plaintiffs intend to move for leave to amend pursuant to Federal Rule of Civil Procedure 15(B). The opposition also requests the Court enter a default judgment against defendant Johnson. On June 19, 2014, Plaintiffs filed a supplemental exhibit to their affidavit in opposition. [Dkt. 15.]

Defendant's Motion is before the Court.

## II. Standard of Review

Federal Rule of Civil Procedure 12(b)(2) permits dismissal of an action when the Court lacks personal

4

jurisdiction over the parties.  The plaintiff bears the burden of demonstrating personal jurisdiction by a preponderance of the evidence once its existence is questioned by the defendant. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).  When a district court decides a pretrial personal jurisdiction dismissal motion without an evidentiary hearing, however, the plaintiff need prove only a prima facie case of personal jurisdiction.  *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993); *Combs*, 886 F.2d at 676.  In deciding whether the plaintiff has proved a prima facie case, the district court must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor.  *Combs*, 886 F.2d at 676; *Wolf v. Richmond Cnty Hosp. Auth.*, 745 F.2d 904, 908 (4th Cir. 1984), *cert. denied*, 474 U.S. 826 (1985).

      Federal Rule of Civil Procedure 12(b)(3) permits dismissal of an action where venue is improper.  After the defendant raises an objection to venue, the plaintiff has the burden to establish that venue is appropriate in this district. *United Coal Co. v. Land Use Corp.*, 575 F. Supp. 1148, 1158 (W.D. Va. 1983); 15 Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, *Federal Practice and Procedure* § 3826 (2d ed. 2005). When no evidentiary hearing is held, the plaintiff need only make a prima facie showing of venue to survive a motion to

dismiss for improper venue. *Mitrano v. Hawes,* 377 F.3d 402, 405 (4th Cir. 2004).

### III. Analysis

A. <u>Motions Currently Before the Court</u>

Defendant Romney filed his Motion to Dismiss on April 30, 2014. Local Rule 7(F)(1) provides that "the opposing party shall file a responsive brief and such supporting documents as are appropriate, within eleven (11) days after service." Local Civ. R. 7(F)(1). Federal Rule of Civil Procedure 6(d) provides a three (3) day extension period for service made in particular ways, including, as in this case, by mail. Fed. R. Civ. P. 6(d). Therefore, Plaintiffs' opposition was due fourteen days after the Motion was filed, on or before May 14, 2014. Plaintiffs' opposition, filed on June 16, 2014, falls well beyond this period. Plaintiffs have not moved for an extension of time and have not provided any reasons justifying this delay. On June 16, 2014, before Plaintiffs filed their opposition, Romney filed a Notice of No Response by Plaintiff and requested that the Court grant his Motion as unopposed. [Dkts. 11-12.] Plaintiffs' opposition and supplemental exhibit are untimely. Nevertheless, Court will address the arguments raised in these papers because even considering the facts offered by Plaintiffs, this case must be dismissed.

Additionally, to the extent that Plaintiffs intend to move for leave to amend and for default judgment through this filing, these motions are not properly before the Court at this time. The Court will not address these newly raised requests in Plaintiffs' opposition. The Court will consider these motions "if separately filed, and properly briefed" once the instant motion has been determined. *Banks v. Gen. Motors LLC,* No. 3:12CV201, 2012 WL 7006844, at *3 (E.D. Va. Dec. 31, 2012).

    B.   <u>Motion to Dismiss for Lack of Personal Jurisdiction</u>

In Virginia, to establish jurisdiction over a non-resident, this Court must consider first whether jurisdiction is authorized by Virginia law, and then whether the exercise of jurisdiction comports with the due process requirements of the Fourteenth Amendment to the United States Constitution. *Consulting Eng'rs Corp. v. Geometric, Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009). As Virginia's general long-arm statute extends personal jurisdiction to the fullest extent permitted by due process, the statutory inquiry merges with the constitutional inquiry. *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002). As a result, the Court need only undertake one inquiry to determine whether the exercise of jurisdiction here comports with the Fourteenth Amendment's due process requirements.

To satisfy the requirements of due process, a defendant must have sufficient "minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.,* 326 U.S. 310, 316 (1945). To meet this minimum contacts test, a plaintiff must show that a defendant "'purposefully directed his activities at the residents of the forum' and the litigation results from alleged injuries that 'arise out of' those activities." *Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985). This test is designed to ensure that the defendant is not "haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Consulting Eng'rs Corp.*, 561 F.3d at 277.

Two types of personal jurisdiction meet these constitutional requirements: specific jurisdiction and general jurisdiction. In analyzing the due process requirements for asserting specific jurisdiction, the Fourth Circuit has set out a three part test in which the Court must consider, in order, (1) "the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State"; (2) "whether the plaintiffs' claims arise out of those activities directed at the State"; and (3) "whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Eng'rs Corp.*, 561 F.3d at 279 (*citing ALS Scan, Inc.*

8

*v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002)). General jurisdiction exists for claims entirely distinct from the defendant's in-state activities where a defendant's activities in a state have been "continuous and systematic." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984).

The Court first will analyze whether there is specific jurisdiction under the facts here. Then, the Court will consider whether general jurisdiction is proper.

1. Due Process Analysis for Specific Jurisdiction

In assessing the first prong of the test, courts in the Fourth Circuit consider a variety of nonexclusive factors in determining whether a defendant has purposefully availed himself of the forum at issue. *Consulting Eng'rs Corp.*, 561 F.3d at 278. In a business context, these factors may include: (1) whether the defendant maintains offices or agents in the forum state; (2) whether the defendant owns property in the forum state; (3) whether the defendant reached into the forum state to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the forum state; (5) whether the parties contractually agreed that the law of the forum state would govern disputes; (6) whether the defendant made in-person contact with the resident of the forum in the forum state

9

regarding the business relationship; (7) the nature, quality and extent of the parties' communications about the business being transacted; and (8) whether the performance of contractual duties was to occur within the forum. *Id.*

Considering these factors and the case at hand overall, the Court concludes that Romney did not purposefully avail himself of the privilege of conducting activities in Virginia. Romney does not maintain offices, agents or own property in Virginia. (Romney Decl. ¶¶ 8, 12.) Therefore, the only basis this Court could have for exercising specific jurisdiction over Romney is his contractual relationship with Plaintiffs.[1] Romney is an attorney, licensed and practicing in Arizona. (Romney Decl. ¶ 4.) Defendant asserts that he became involved with Plaintiffs when he responded to a request posted on "phoenix.craigslist.org" seeking an Arizona attorney to act as local counsel in the *Wanchuk* matter. (Romney Decl. ¶ 5.) Romney did not reach into Virginia to initiate this business; he responded to an advertisement aimed at Phoenix lawyers, concerning work to be performed in Arizona. (Romney Decl. ¶ 8.) In discussing the legal work to be performed, DeLeonardis met

---

[1] Plaintiffs' only statement in their opposition brief concerning Romney's contacts with Virginia outside of his contractual relationship with DeLeonardis is that Romney represents "Kittikachorn, a resident of the Washington, D.C. and northern Virginia metropolitan area in an action currently pending the Superior Court, Maricopa County." (Hirsch Aff. ¶ 8.) It is not clear based on this statement where Kitticachorn actually resides. The Court cannot find that Romney purposefully availed himself of the privilege of doing business in Virginia based on this imprecise claim.

10

with Romney in Arizona. (Romney Decl. ¶ 10.) No portion of the *Wanchuk* matter was litigated in Virginia and Romney did not conduct any work on this matter outside of Arizona. (Romney Decl. ¶¶ 5-7)

Moreover, while Romney entered into a contractual relationship with a resident of Virginia, "[t]he mere existence of a contract with the out-of-state party cannot automatically establish sufficient minimum contacts." *Initiatives Inc. v. Korea Trading Corp.*, 991 F. Supp. 476, 479 (E.D. Va. 1997); *see Burger King*, 471 U.S. at 478 ("If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot.") (emphasis in original). The contract is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." *Burger King*, 471 U.S. at 479 (quoting *Hoopeston Canning Co. v. Cullen*, 318 U.S. 313, 316-17 (1943)). A court should therefore evaluate "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" in determining whether defendant has "purposefully established minimum contacts within the forum." *Id.*

Here, the contract between Romney and Plaintiffs concerned Romney's representation of Plaintiffs in the *Wanchuk* litigation. (Compl. Ex. 1 [Dkt. 1-1].) All acts contemplated under the engagement agreement concerned the *Wanchuk* litigation in the Superior Court of Arizona; Romney's services would necessarily be performed in Arizona. Plaintiffs note that "[d]uring the course of the aborted representation, Romney telephoned and sent correspondence, electronic and otherwise, hundreds and hundreds of such communications, to DeLeonardis in the Commonwealth of Virginia." (Hirsch Aff. ¶ 7.) Correspondence alone, however, is not sufficient to establish minimum contacts that satisfy due process. *Cape v. von Maur*, 932 F. Supp. 124, 128 (D. Md. 1996) ("Generally speaking, correspondence and phone calls from out-of-state defendants to in-state plaintiffs are insufficient as a matter of law to establish the minimum contacts that satisfy due process.").

Therefore, the Court finds that Romney did not purposefully avail himself of the benefits or protections of Virginia law by responding to a post on a Phoenix, Arizona-specific section of Craigslist, and subsequently entering into an engagement agreement concerning an Arizona lawsuit, merely because one of the clients is a resident of this state. *See Masselli & Lane, PC v. Miller & Schuh,* PA, No. 99-2440, 2000 WL 691100, at *2 (4th Cir. May 30, 2000) ("When a case involves

12

legal representation by an out-of-state law firm, courts emphasize the importance of . . . who initiated the contact."); *Cape*, 932 F. Supp. at 128 ("case law overflows on the point that providing out-of-state legal representation is not enough to subject an out-of-state lawyer or law firm to the personal jurisdiction of the state in which a client resides") (collecting cases). Indeed, this Court has noted with approval that "other courts have suggested that the question of personal jurisdiction in legal malpractice situations involving out-of-state attorneys may turn on where the underlying lawsuit would have been prosecuted and which state's law would have applied." *Allen v. James*, 381 F. Supp. 2d 495, 498 (E.D. Va. 2005). In this case, both the *Wanchuk* and the *Janitell* actions underlying these claims were prosecuted in the Superior Court of Maricopa County, Arizona.

Moreover, this case is significantly distinguishable from the case of *English & Smith v. Metzger*, where the Fourth Circuit affirmed this Court's exercise of personal jurisdiction over an out-of-state attorney. 901 F.2d 36 (1990). In *English & Smith*, the defendant Metzger, a California lawyer, "initiated the relationship" with Smith, a Virginia lawyer. *English & Smith*, 901 F.2d at 39. Metzger "entered into contracts with Smith by virtue of action taken in Virginia, and carried on a continuing relationship with Smith in Virginia." *Id.* at 39-40.

13

Accordingly, the court found that Metzger's "intentional contacts with the State" were sufficient to meet the requirements of due process. *Id.* at 40. Here, by contrast, Plaintiffs initiated the relationship with Romney in Arizona, for work to be performed in Arizona. Unlike the defendant in *English & Smith*, Romney did not purposefully direct his activities at Virginia such that the exercise of jurisdiction would comport with due process.

Because Plaintiffs have not satisfied this first prong of the test for specific jurisdiction, further consideration of prongs two and three is unnecessary. *Consulting Eng'rs Corp.*, 561 F.3d at 278 ("If, and only if, we find that the plaintiff has satisfied this first prong of the test for specific jurisdiction need we move on to consideration of prongs two and three.").

### 2. General Jurisdiction

Additionally, the Court does not have general jurisdiction over Romney. Plaintiffs do not allege that Romney has any "continuous or systematic" contacts with the state of Virginia. *Helicopteros*, 466 U.S. at 415-16. As the Supreme Court noted in *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853 (2011), "for an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." Romney is a resident of Arizona who has

had no contacts with Virginia, other than with Plaintiff DeLeonardis. Accordingly, general jurisdiction is improper.

### 3. Wire Transfer

At oral argument on June 19, 2014, Plaintiffs raised for the first time the issue of quasi in rem jurisdiction.[2] Plaintiffs submitted to the Court a copy of an outgoing wire detail from TruWest Credit Union. [Dkt. 15.] This wire detail shows a transfer from a sending financial institution listed as TruWest Credit Union to the receiving financial institution "WP CONG FCU WASH." The originator of the transaction is Adam Romney. The wire detail also lists the address of a beneficiary as "449 1ST STREET SOUTHEAST WASHINGTON DC 20003." Plaintiffs assert that "WP CONG FCU WASH" is the Congressional Federal Credit Union, a bank headquartered in Oakton, Virginia, that maintains offices in Washington, D.C. Plaintiffs argue this Court may exercise jurisdiction over Romney because he transferred the settlement funds at issue in this action to a bank headquartered in Virginia.

Plaintiff's argument is flawed because funds transferred to the Congressional Federal Credit Union in Washington, D.C. do not provide a basis for the exercise of jurisdiction in Virginia. That the bank is headquartered in

---

[2] The Court will not address whether it would otherwise be able to exercise in rem jurisdiction over this action under *Shaffer v. Heitner*, 433 U.S. 186 (1977) because the property at issue is not in this jurisdiction in the first instance.

Oakton, Virginia does not change this analysis. Courts within the Fourth Circuit have found that a court may not obtain "quasi in rem jurisdiction over another party through service on the branch of a bank found in a district other than the district where the bank account is maintained." *Woodlands, Ltd., v. Westward Ins. Co., LTD*, 965 F. Supp. 13, 14-15 (D. Md. 1997) (decided on the basis of federal admiralty law, but noting that Maryland law compelled the same result); *Sara Lee Corp. v. Gregg*, No. 1:02CV195, 2003 WL 23120116, at *3 (M.D.N.C. Dec. 18, 2013) ("The general rule is that each branch of a bank is considered a separate entity, and in no way concerned with accounts maintained by depositors in other branches or at the home office, when it comes to attachment or garnishment." (internal quotation marks omitted)). Accordingly, because the Congressional Federal Credit Union in Washington is a separate branch, and because the funds were wired to an account in Washington, D.C., not Virginia, this Court has no basis for exercising quasi in rem jurisdiction.

Because the Court has no basis for the exercise of jurisdiction over Romney, Romney's motion to dismiss for lack of personal jurisdiction is granted. Plaintiffs' complaint against Romney is dismissed.

C.  Motion to Dismiss for Improper Venue

The Complaint states that venue is appropriate in this District pursuant to 28 U.S.C. §§ 1391(a)(1), (b)(1), (c) and (d). Section 1391(b)(1) does not, however, provide Plaintiffs with proper venue in this district and no other sub-section of the federal venue statute is available to lay venue in this district based on the facts alleged in the Complaint.

Section 1391(b) provides that a civil action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Turning first to § 1391(b)(1), Plaintiffs allege that Defendants Johnson and Romney are both residents of the State of Arizona.[3]

---

[3] The Complaint clearly states that Romney is a resident of Arizona. (Compl. ¶ 4.) Regarding Johnson's residence, the Complaint alleges that he is "a resident of the States of Texas and Arizona, and resides in Arizona at 2625 South Country Club, Tempe, Arizona 85282. (Compl. ¶ 3.) Under § 1391(c)(1), a natural person is deemed "to reside in the judicial district in which that person is domiciled." 28 U.S.C. § 1391(c)(1). Even if Johnson were not domiciled in Arizona, laying venue in this district would still be improper because the action could be brought in the District of Arizona based on § 1391(b)(2).

17

(Compl. ¶ 3, 4.)  Because all defendants are residents of the State of Arizona, venue is proper in the District of Arizona.  Likewise, the District of Arizona is a proper venue pursuant to § 1391(b)(2).  All of the events or omissions giving rise to Plaintiffs' claims occurred in Arizona.  The settlement funds at issue in this action were located in an escrow account in Scottsdale, Arizona.  (Compl. Ex. 5.)  As noted previously, Plaintiffs claim that these funds have been transferred to Congressional Federal Credit Union, in Washington, D.C.  [Dkt. 15.]  Neither location, however, is in this district.  This district's only connection to the matter at issue here is that one of the plaintiffs is a resident.

Because this action may be brought in the District of Arizona, 1391(b)(3) is unavailable to permit Plaintiffs to bring this action in the Eastern District of Virginia.  Accordingly, Rule 12(b)(3) provides an alternative basis for dismissal of Plaintiffs' complaint as to Romney.

## IV. Conclusion

For the foregoing reasons, the Court will grant Defendant's Motion to Dismiss.

An appropriate Order will issue.

|  | /s/ |
|---|---|
| June 26, 2014 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |